Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 1/8/2003 |
| **CASE TITLE** | Zenith Electronics Corporation vs. WH-TV Broadcasting | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] General Instrument's motion to dismiss Zenith's cross-claim for indemnification (180-1) is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order (attached to) the original minute order.]

| ✓ | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | JAN - 9 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 237 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | | |
| | | | 03 JAN -8 PM 3:22 | date mailed notice | |
| SLB | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZENITH ELECTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | 01 C 4366 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| WH-TV BROADCASTING CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

General Instrument Corporation ("General Instrument") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Zenith Electronics Corporation's ("Zenith") Cross-Claim for Indemnification. For the reasons stated below, the motion to dismiss is granted.

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to the allegations in Zenith's cross-claim and WH-TV Broadcasting Corporation's ("WH-TV") counterclaim, Zenith sold set-top boxes to WH-TV, a cable television operator. Zenith promised that the boxes would function as described in the proposal, would contain an enhanced electronic program guide, and would comply with digital video broadcast ("DVB") standards. The set-top boxes were delivered in 1999. According to WH-TV, the set-top boxes it bought from Zenith did not function properly,[1] contained an inadequate electronic program guide, and were not DVB-

---

[1] For example, the boxes did not respond properly, re-booted on their own, locked up when changing channels, had no secondary audio program capability, and lacked parental control and close-captioning functions. In addition, during prime time, channels froze up and some subscribers experienced a total loss of video.

compliant. Zenith made efforts to correct some of the functionality problems, and assured WH-TV that it would convert the boxes to DVB-compliance no later than December 2000. Zenith's efforts to correct the problems were unsuccessful (and in fact some of the "upgrades" caused new problems), and it did not convert the boxes to DVB-compliance.

On July 17, 2000, Zenith and General Instrument entered into an Asset Purchase Agreement, under which Zenith sold to General Instrument the Zenith division that was responsible for manufacturing the set-top boxes. Under the agreement, General Instrument agreed to assume certain liabilities in connection with the operation of the business. The agreement provided that General Instrument would indemnify Zenith from all losses relating to these assumed liabilities.

On June 11, 2001, Zenith brought this breach of contract action against WH-TV, alleging that WH-TV failed to pay Zenith for the set-top boxes. WH-TV counterclaimed, alleging fraud and breach of contract, based on its allegations that the set-top boxes were defective and that Zenith's equipment was not DVB-compliant. On October 8, 2002, WH-TV added General Instruments as an additional counter-defendant. Zenith filed a cross-claim for indemnification against General Instrument, in the event that it is held liable to WH-TV.

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995).

General Instrument argues that Zenith's indemnification claim should be dismissed for failure to state a claim because WH-TV's claims against Zenith do not relate to the liabilities General Instrument assumed under the Asset Purchase Agreement. The indemnification provision of the agreement states that General Instrument shall indemnify Zenith against losses sustained by Zenith that result from, arise out of, or relate to:

>  (i) any misrepresentation, breach of warranty or nonfulfillment of or failure to perform any covenant or agreement on the part of [General Instrument] contained in this Agreement...; or
> 
> (ii) any Assumed Liability;
> 
> (iii) except as otherwise expressly provided in this Agreement, any obligation, Liability, action, suit, claim or other proceeding which arises directly or indirectly out of [General Instrument's] operation of the Business or use of the Assets on or after the Closing...and which does not result from a breach of [Zenith's] representations and warranties or covenants.

Zenith's cross-claim invokes the latter two provisions.

Two assumed liabilities are relevant to Zenith's cross-claim. First, General Instrument assumed Zenith's obligations under its business contracts and licenses that were to be performed on or after the closing date. Second, General Instrument assumed Zenith's obligations for warranty repair work on the set-top boxes. To qualify as an assumed liability under the agreement, the obligation must "aris[e] from and after the Closing Date in connection with the operation of the Business." The closing date was to be no later than August 31, 2000.

WH-TV has alleged that Zenith was obligated to develop certain features relating to the electronic program guide in a timely manner. In addition, WH-TV's claims that Zenith provided it assurances that the set-top boxes would be made DVB-compliant no later than December 2000. Zenith contends that because there was no specific time restriction on the former obligation, and

3

the latter obligation could be fulfilled up to December 2000, both obligations could conceivably require performance after the closing date. Thus, according to Zenith, these obligations were contract obligations to be performed after the closing date, and, as such, were liabilities assumed by General Instrument.

General Instrument responds that Zenith's assurances that it would make the set-top boxes DVB-compliant by December 2000 did not constitute a separate contractual obligation, but rather was part of Zenith's effort to remedy its failure to perform its original contractual obligation to provide DVB-compliant equipment. Similarly, General Instrument argues, Zenith's obligation to provide an enhanced electronic program guide was part of Zenith's obligation under its original contract with WH-TV.

The court agrees with General Instrument. The provision of the Asset Purchase Agreement relating to General Instrument's assumption of obligations under business contracts states that General Instrument would assume such obligations:

> provided that, in no event will [General Instrument] assume any obligation of [Zenith] that relates to [Zenith's] performance or non-performance of any of its obligations under any Business Contract or the terms and conditions of any License prior to the Closing Date even if claims with respect thereto are asserted after the Closing Date.

Zenith supplied the set-top boxes to WH-TV well before the execution of the Asset Purchase Agreement. Zenith's original obligation to supply set-top boxes that were DVB-compliant and contained an enhanced electronic program guide was required to be performed before the closing date. Thus, Zenith's subsequent assurances that it would remedy its failure to perform that original obligation did not create a new business contract, but rather merely constituted an obligation relating to Zenith's performance or non-performance of a contractual obligation,

4

which "in no event [would General Instrument] assume." Zenith's obligation to perform under its contract with WH-TV arose prior to the closing date, even if its attempts to remedy its nonperformance continued to a later date.

Similarly, General Instrument did not assume Zenith's obligations to provide set-top boxes that were DVB-compliant and contain an enhanced electronic program guide, or Zenith's obligation to provide boxes that were designed or manufactured to function as promised, under the "Warranty Repair Obligations" portion of the Assumed Liabilities provision. As with the other Assumed Liabilities, General Instrument assumed a warranty repair obligation only to the extent that it arose from and after the closing date. Since the problems alleged in WH-TV's counterclaim arose prior to the closing date, they would not be subject to the warranty assumed by General Instrument.

Nor can Zenith rely on the provision of the Asset Purchase Agreement that obligates General Instrument to indemnify Zenith for claims arising from General Instrument's operation of the business or use of the assets on or after the closing date. That obligation only arises if the claim "does not result from a breach of [Zenith's] representations and warranties or covenants." As discussed above, Zenith allegedly breached its original contractual representations that the set-top boxes would be DVB-compliant, would contain an enhanced electronic program guide, and would function as promised.

**ORDERED:** General Instrument's Motion to Dismiss Zenith's Cross-Claim for Indemnification [180-1] is granted.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: JAN 0 8 2003

6