# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 6/18/2003 |
| **CASE TITLE** | Zenith Electronics Corporation vs. WH-TV Broadcasting Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] WH-TV's motion for summary judgment (436-1) is denied. GI and Motorola's motion for summary judgment (441-1) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 6-19-03 | |
| | Notified counsel by telephone. | | date docketed | 538 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| | | 03 JUN 18 PM 5:38 | date mailed notice | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZENITH ELECTRONICS CORPORATION, )
)
Plaintiff/Counter-Defendant, )
) 01 C 4366
v. )
) Judge George W. Lindberg
WH-TV BROADCASTING CORPORATION, )
)
Defendant/Counter-Plaintiff. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zenith Electronics Corporation ("Zenith") brought this diversity action against defendant WH-TV Broadcasting Corporation ("WH-TV"), alleging a state law claim of breach of contract, and seeking a declaratory judgment as to the terms and conditions of the contract between WH-TV and Zenith. WH-TV counterclaimed, alleging breach of contract. WH-TV also brought third-party claims of promissory and equitable estoppel and breach of warranty against General Instrument Corporation ("GI") and Motorola, Inc. ("Motorola"). Before the court are WH-TV's, and GI and Motorola's cross-motions for summary judgment as to Counts III through VII of WH-TV's Second Amended Third Party Complaint against GI and Motorola. For the reasons stated below, WH-TV's motion is denied. GI and Motorola's motion is granted in part and denied in part.

**I. Factual Background[1]**

WH-TV has broadcast analog wireless cable television service in Puerto Rico since 1987.

---

[1] The parties have filed several motions to strike various submissions made in connection with the motions for summary judgment. The court is issuing separate minute orders addressing these motions today. The facts contained in this opinion reflect the court's rulings on the motions to strike.

In 1998, WH-TV decided to convert its analog system to a digital system. One component of a digital television system is a set-top box ("STB"), which is connected to the subscriber's television. The STB decodes and processes digital signals to allow the subscriber to watch television programming, as well as allowing subscribers to access features such as electronic program guides, secondary audio programming, and closed captioning.

In 1998, WH-TV sought proposals from various STB suppliers. WH-TV shopped for a supplier that could provide "open" or "DVB compliant" equipment, which would allow its system to broadcast a single signal to STBs manufactured by multiple companies. The advantage of DVB-compliant equipment thus was that it would allow WH-TV to use more than one STB supply source and obtain STBs on a competitive basis.

In September 1998, Zenith responded to WH-TV's request for proposal. Zenith's proposal represented that its STBs were DVB compliant and fully capable of meeting WH-TV's requirements. It also represented that its STBs used a "standards based" design and technologies to promote network interoperability, which provided the flexibility to "mix and match" components from many vendors. Finally, the proposal included a one-year warranty, guaranteed that the STBs would function as described in the proposal, and guaranteed that they would have a meantime between failure of 100,000 hours (the equivalent to more than ten years).

Zenith representatives also made presentations to WH-TV, which included representations that Zenith's STBs were DVB compliant, and contained reliable software and hardware. Zenith also promised to supply WH-TV with an electronic program guide with enhanced features, including a seven-day look-ahead feature.

In response to Zenith's written proposals and representations, WH-TV ordered a total of

2

8,900 STBs from Zenith, in four purchase orders sent between May 3, 1999 and December 23, 1999. The STBs were delivered beginning in May 1999. WH-TV paid Zenith more than $2.6 million for the STBs.

From the outset, the STBs did not work properly. In addition, the STBs lacked certain promised features, including an electronic program guide with a seven-day look-ahead feature. Finally, the STBs were not DVB compliant. In an attempt to fix problems with the STBs, Zenith delivered at least eight new operating system upgrades. In a May 25, 2000 presentation, Zenith reiterated its promise to provide the enhanced electronic program guide and fully DVB-compliant software, and stated that it would do so no later than the fourth quarter of 2000.

Meanwhile, in February 2000, Zenith had signed a letter of intent with GI regarding the sale of certain assets of Zenith's Network Systems Division, the division responsible for making the STBs. On July 17, 2000, Zenith and GI entered into an Asset Purchase Agreement. Under the Asset Purchase Agreement, GI agreed to assume portions of Zenith's obligations, including a twelve-month repair and replacement warranty on one model of STB supplied to WH-TV. In addition, GI agreed to assume Zenith's obligations under its business contracts that arose after the closing date of the asset sale. According to WH-TV, it did not receive a copy of the Asset Purchase Agreement at the time of the asset sale.

Following the execution of the Asset Purchase Agreement, Zenith's Network Systems Division's president, William Luehrs, left Zenith's employ and entered into a consulting agreement with GI. In addition, other Zenith employees associated with the division became employees of Motorola, GI's parent company. These employees included Zenith's Vice President and General Manager of the group that manufactured and serviced the STBs; Zenith's

Vice President of the Customer Care Group in the Network Systems Division; and the manager of the digital support team of engineers who were responsible for installation, maintenance, and support of the STBs sold to WH-TV.

Following the asset sale, Motorola continued the work that Zenith had been performing to resolve problems with the STBs in WH-TV's system. Starting in September 2000, Motorola's manager of the digital support team maintained ongoing contact with WH-TV's director of engineering regarding software issues and problems WH-TV was having with its system. Motorola retained a consultant to analyze the cause of, and propose solutions for, software deficiencies in the WH-TV STBs. Motorola delivered new operating system upgrades to WH-TV in July 2001 and October 2001.

In November 2000, WH-TV representatives met with representatives of Motorola and Zenith. At the meeting, WH-TV made a presentation regarding the technical problems it was experiencing with the STBs, as well as its claim for damages. According to WH-TV, at that meeting, Motorola representative Luehrs promised that Motorola would correct the remaining technical defects in the STBs, and would "get you open." Motorola denies that such statements were made. At the conclusion of the meeting, the head of Motorola's Satellite and Broadcast Systems business unit stated that he would get back to WH-TV after speaking with Motorola's legal team.

Between November 26, 2000 and March 7, 2001, WH-TV sent numerous communications to Motorola, asking for a response to the proposal WH-TV had made in the November 2000 meeting. Meanwhile, according to WH-TV, in telephone calls in January and February 2001, Luehrs informed WH-TV that work on various software fixes and DVB

compliance was ongoing. Luehrs testified that Motorola "continued to provide software development support all through this process."

In February 2001, Nagra, the subcontractor of WH-TV's supplier that provided WH-TV's conditional access system, prepared a document entitled "DVB Migration Plan." This document describes the process by which the STBs were to be upgraded to DVB compliance (according to WH-TV) or to allow other manufacturers' STBs to work on the same system as the Zenith STBs (according to GI and Motorola). Motorola also prepared a migration plan. Motorola implemented the modifications to the STB software in accordance with its migration plan.

In a March 9, 2001 letter, Motorola advised WH-TV that it had decided to discontinue production of STBs. Also in that letter, Motorola offered to accept purchase orders for STBs until April 15, 2001. Motorola offered to deliver a version of software that would support Nagra's upgrade to a DVB-standard conditional access system by June 30, 2001. In addition, Motorola offered to provide limited product warranty support and out-of-warranty support on a mutually acceptable basis. Motorola stated that this offer was subject to the parties reaching a commercial agreement.

In an April 5, 2001 letter to WH-TV, Motorola's William Luehrs stated that "GI does not have contractual or other legal obligations to WHTV for issues associated with prior equipment sales from Zenith...except for limited product warranty repair work." In an April 9, 2001 response to Motorola, WH-TV characterizes the April 5 letter as "a first ever attempt to disclaim liability on your behalf. This is also the first time ever that you or anybody, on behalf of Motorola or Zenith, has mentioned General Instrument as a party in interest."

According to WH-TV, Motorola never repaired many software bugs, or provided the

5

software fixes necessary to enable closed captioning on digitally turned around channels. Neither Motorola nor GI ever provided WH-TV with an enhanced program guide with a seven-day look-ahead feature. According to WH-TV, the multicast plan implemented by Motorola in December 2001 does not allow WH-TV to operate DVB-compliant STBs from other manufacturers alongside the Zenith STBs without experiencing loss of functionality. In addition, according to WH-TV, even if the multicast plan was successfully implemented, it would result in a reduction in the number of services that WH-TV can offer, because the plan uses more bandwidth. As of December 31, 2002, the Zenith STBs in use by WH-TV still were not fully DVB compliant.

At some point, Motorola directed WH-TV to send defective STBs to Contec, Inc. for repair. WH-TV states that Contec, Inc. eventually advised WH-TV that it no longer had the technical resources necessary to repair WH-TV's STBs. According to WH-TV, no repair options currently exist for its broken or defective STBs. WH-TV's system currently continues to have symptoms suggesting that unresolved problems remain.

The ongoing operating problems and lack of promised features in the Zenith STBs prevented WH-TV from launching its digital service. The Zenith STBs, as originally installed, did not allow STBs from other manufacturers to operate alongside the Zenith STBs. The delay due to the functionality problems and lack of DVB compliance caused WH-TV to miss the opportunity to become the first company to offer digital television broadcasting with a full array of local channels in its signal area.

## II. Analysis

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no

6

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A. Promissory Estoppel

WH-TV, Motorola, and GI all seek summary judgment on WH-TV's promissory estoppel claims, which are asserted against Motorola in Count IV and against GI in Count VI. Those claims allege that GI and Motorola should be estopped from asserting that their liability is limited under the Asset Purchase Agreement, because after the asset sale they made promises to WH-TV that they would correct the defects in the STBs, supply the missing features, and make the system DVB compliant.[2]

To prevail on a claim of promissory estoppel under Illinois law, a plaintiff must show that (1) the defendant made an unambiguous promise; (2) the plaintiff relied on the promise; (3) the reliance was reasonable and foreseeable; and (4) plaintiff's reliance caused it harm. Quake

---

[2] WH-TV does not claim that GI actually performed any of the work on the STBs, and rests its estoppel claims against GI on a theory that Motorola acted as GI's agent in performing the work. For the purpose of their motion for summary judgment, GI and Motorola assume that WH-TV's allegations against Motorola also were made against GI. Since GI and Motorola do not contest agency at this point, and WH-TV's motion for summary judgment fails on other grounds, the court need not address the issue of agency.

7

Constr., Inc. v. American Airlines, Inc., 565 N.E.2d 990, 1004 (Ill. 1990); Fischer v. First Chicago Capital Markets, Inc., 195 F.3d 279, 283 (7th Cir. 1999).

WH-TV contends that GI and Motorola promised to provide software fixes and DVB compliance. Some of the representations cited by WH-TV, however, were made by Zenith employees prior to the asset sale. Although these employees may have later joined Motorola, they certainly were in no position to make promises on Motorola's behalf prior to doing so. WH-TV also offers evidence that at a November 2000 meeting, Motorola representative Luehrs told WH-TV that Motorola was "going to get you open," apparently meaning DVB compliant, and that Motorola would not "leave [WH-TV] high and dry." These statements are not "unambiguous promises." Nor are the statements in a March 9, 2001 Motorola letter offering to support an upgrade to a DVB-compliant conditional access system, and provide limited product warranty and out-of-warranty support. The letter characterizes those statements as an "offer" that is "subject to the parties reaching a commercial agreement," and concludes with the statement that "[w]e look forward to hearing back from you if you would like to pursue business dealings on the basis described in this letter."

However, according to WH-TV, at the November 2000 meeting, Luehrs also promised that Motorola would correct the remaining technical defects in the STBs. Motorola and GI argue that WH-TV's evidence that Luehrs made the promise is not credible, because following the meeting WH-TV repeatedly demanded a response to WH-TV's proposal, and did not refer to any promises that Motorola had made at the meeting. However, at this stage the court must draw all reasonable inferences in WH-TV's favor in considering Motorola's and GI's motion.

WH-TV also offers the testimony of Don Alexander, who was Zenith's Vice President

8

and General Manager of the group that manufactured and serviced the STBs prior to the asset sale, and worked for Motorola after the asset sale. Alexander testified that after the asset sale, Motorola promised to provide an enhanced program guide. The court concludes that, at this stage, WH-TV has produced sufficient evidence to establish a factual issue as to whether Motorola made promises to WH-TV.

The court next considers whether WH-TV has shown that it reasonably and foreseeably relied to its detriment on these promises. WH-TV argues that it relied on Motorola's promises by not entering into a contractual relationship with another engineering source that may have been able to correct the defects in a timely manner. According to WH-TV, it was harmed as a result of this reliance when it was forced to delay the launch of its digital television service. The court finds that this is adequate evidence to withstand summary judgment on the reliance portion of the inquiry. Since factual disputes remain as to WH-TV's promissory estoppel claim, both motions for summary judgment are denied as to Counts IV and VI.

### B. Equitable Estoppel

WH-TV, Motorola, and GI also seek summary judgment on WH-TV's equitable estoppel claims, which are asserted against Motorola in Count III and against GI in Count V. To prevail on its equitable estoppel claims, WH-TV must show, among other things, that it reasonably relied upon GI's and Motorola's misrepresentations or concealment of material fact, in good faith, and to its detriment. See Vaughan v. Speaker, 533 N.E.2d 885, 890 (Ill. 1988). The party asserting equitable estoppel has the burden of proving it by "clear, precise and unequivocal evidence." Marks v. Rueben H. Donnelly, Inc., 636 N.E.2d 825, 832 (Ill. App. Ct.) (citations omitted), appeal denied, 642 N.E.2d 1283 (Ill. 1994).

9

According to WH-TV, Motorola concealed the fact that it had not assumed all of Zenith's responsibilities to WH-TV at the time of the asset sale, under circumstances that made its silence amount to a misrepresentation of material fact. WH-TV states that Zenith personnel made representations prior to the asset sale that Motorola would support WH-TV's STBs, and failed to disavow these representations after they became Motorola employees following the sale. WH-TV argues that Motorola's failure to inform WH-TV that it had not assumed Zenith's responsibilities amounted to a misrepresentation of material fact, given its employees' failure to disavow their prior representations, along with Motorola's November 2000 promises to resolve the software defects and provide DVB compliance, and the fact that Motorola made substantial efforts to fix problems with the software, provide certain features, and provide DVB compliance.

Putting aside the question of whether WH-TV has adequately shown that Motorola concealed a material fact, the court concludes that WH-TV's equitable estoppel claim fails for lack of evidence that WH-TV relied to its detriment on any concealment by Motorola of the fact that it did not assume all of Zenith's obligations. WH-TV must show that it was harmed by its reliance on a belief that Motorola was *contractually obligated* to perform the work it performed. That is, WH-TV must offer evidence that it would have acted differently had it known that Motorola was performing work as a service to a customer, rather than out of a contractual obligation, and that it was harmed by failing to take such other action.

WH-TV argues that during the time Motorola was performing work on the STBs, WH-TV relied on its misapprehension that Motorola was contractually obligated to perform the work in two ways. First, WH-TV argues that it relied to its detriment by delaying filing suit against Zenith or otherwise forcing Zenith to repair the STBs and supply the missing features. The court

10

finds this argument unpersuasive. According to WH-TV, Zenith was unsuccessful in repairing the STBs and supplying the missing features during the time prior to the asset sale. There is no evidence that if WH-TV had filed suit against Zenith immediately after the asset sale, Zenith could or would have successfully resolved the problems with the STBs.

Second, WH-TV argues that it was harmed in relying on its misapprehension that Motorola was contractually obligated to perform the work, by not engaging an engineering source that *was* contractually obligated to WH-TV. However, WH-TV offers no evidence that explains why it would have made a difference if the work done on the STBs had been done by engineers who were contractually obligated to do so, as opposed to engineers who did the work as a service to a customer. WH-TV has failed to show how it was harmed by not knowing that Motorola was not contractually obligated to the work. GI's and Motorola's motion for summary judgment is granted as to Counts III and V.

### C. Breach of Warranty

WH-TV, Motorola, and GI also seek summary judgment on WH-TV's breach of warranty claim, which is asserted against Motorola and GI in Count VII.[3] GI and Motorola first argue that WH-TV cannot prevail on its breach of warranty claim because GI did not assume a warranty that formed a basis of WH-TV's bargain with Zenith. A breach of express warranty claim cannot stand where there has not been "a breach of an affirmation of fact or promise that was made a

---

[3] Although it is undisputed that only GI was a party to the Asset Purchase Agreement with Zenith, WH-TV also seeks to hold Motorola liable for breach of warranty, under the theory that Motorola acted as GI's agent. As noted above, for the purpose of their motion for summary judgment, GI and Motorola assume that WH-TV's allegations apply equally to both entities. Since GI and Motorola do not contest agency at this point, and WH-TV's motion for summary judgment fails on other grounds, the court need not address the issue of agency.

part of the basis of the bargain." Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627, 634 (Ill. App. Ct.), appeal denied, 755 N.E.2d 477 (Ill. 2001).

As WH-TV notes, its agreement with Zenith included a one-year warranty. In the Asset Purchase Agreement between Zenith and General Instrument, General Instrument assumed Zenith's warranty repair obligations "on products manufactured by the Division and listed in Section 2.28 of the Disclosure Schedule." Schedule 2.28 lists the "DET-MMDS2-ZEC2" STBs sold to WH-TV. Schedule 2.28 states that the warranty on the WH-TV STBs would extend for twelve months after delivery. The schedule provides that the terms and conditions of the assumed warranty were "Standard Terms," which the Asset Purchase Agreement defines as repair and replacement of defective or nonconforming goods. The same "standard terms" as described in the Asset Purchase Agreement, appeared on Zenith's sales orders, which WH-TV denies receiving.

GI and Motorola argue that because the "standard terms" warranty is the only warranty assumed by GI, and WH-TV denies having received it, GI did not assume any warranty that formed the basis of WH-TV's bargain. The court disagrees. GI assumed Zenith's warranty obligations on the products listed in Schedule 2.28, and some of the STBs purchased by WH-TV appear on that list. To be sure, the extent of GI's obligation to WH-TV is limited to the repair and replacement of defective and nonconforming goods, since that is all GI agreed to undertake in the Asset Purchase Agreement. See Trident Indus. Prods. Corp. v. American Nat'l Bank & Trust Co., 501 N.E.2d 273, 281 (Ill. App. Ct. 1986) (noting that "the rights of a third-party benefitted by a contract to sue thereon rest upon the liability of the promisor which must appear

12

from the language of the instrument when properly interpreted and construed.").[4] However, the fact that GI may have agreed to assume a less extensive warranty than Zenith agreed to provide WH-TV does not absolve GI of *all* warranty responsibilities in relation to the STBs sold to WH-TV.

The court turns to the question of whether WH-TV has offered any evidence of defects that would be covered by the warranty GI assumed. Specifically, WH-TV must show that defects in the ZEC2 STBs it purchased from Zenith arose after the closing date of the asset sale, and within twelve months after their delivery. ZEC2 STBs were shipped between May 28, 1999 and January 19, 2000, and accordingly, the twelve-month warranty would be in effect as to at least some of the STBs until January 19, 2001.

WH-TV points to defects identified in a December 11, 2000 Motorola "Open Bug Report," including units turning on by themselves, 8:00 p.m. reboots, audio-visual lock-up and random reboots in multiple dwelling units. However, the Motorola document identifies these defects as occurring the ZEC1 model of STB, not the ZEC2 model that is covered by the assumed warranty.[5] WH-TV also points to a July 25, 2001 Motorola document titled "Software

---

[4] WH-TV argues that even if the Asset Purchase Agreement limits GI's obligations to WH-TV to repair and replacement of defective STBs, GI may nevertheless be liable for consequential damages because the repair remedy failed of its essential purpose. However, WH-TV's rights rest on GI's liability under the Asset Purchase Agreement, which "cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability." See Trident Indus. Prods. Corp., 501 N.E.2d at 281.

[5] WH-TV argues that because the ZEC1 is identical in all material respects to the ZEC2 model, "problems occurring with the ZEC1 were necessarily also occurring with the ZEC2." However, WH-TV does not offer any evidence that any of these problems occurred in the ZEC2 STBs, and the Asset Purchase Agreement expressly limits assumption of the warranty obligation to that model.

13

Release Notes," which lists certain bugs as having been resolved. However, this document does not indicate that the listed defects were present prior to the expiration of the assumed warranty in January 2001. The court concludes that WH-TV has not offered any evidence of defects in the ZEC2 STBs that occurred after the closing date, but before the expiration of the assumed warranty in January 2001.

However, WH-TV does identify one problem that it contends Motorola is responsible for causing. According to WH-TV, work done by a Motorola consultant on an audio-visual loss bug caused a different loss of video problem in the STBs. If Motorola failed to use reasonable care in performing work on the STBs (even if it was performing the work voluntarily, as it claims), it may be liable for negligence. See generally Gust K. Newberg Constr. Co. v. E.H. Crump & Co., 818 F.2d 1363, 1367 (7th Cir. 1987). Since WH-TV has brought to the court's attention the legal support for a negligence claim, it is of no moment that its complaint identifies its theory as one of breach of warranty. See Ryan v. Illinois Dep't of Children & Family Servs., 185 F.3d 751, 764 (7th Cir. 1999). Accordingly, GI's and Motorola's motion for summary judgment as to Count VII is denied. WH-TV's motion for summary judgment as to Count VII is also denied.

**ORDERED:** WH-TV's motion for summary judgment with respect to liability on Counts III through VII of its Second Amended Third Party Complaint [436-1] is denied. GI and Motorola's motion for summary judgment as to Counts III through VII of WH-TV's Second Amended Third Party Complaint [441-1] is granted in part and denied in part: the motion is granted as to Counts III and V, and denied as to Counts IV, VI, and VII.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: JUN 1 8 2003