# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 6/18/2003 |
| **CASE TITLE** | Zenith vs. WH-TV Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] GI's motion for summary judgment (443-1) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 6-19-03 | 539 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | 03 JUN 18 PM 5: 38 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZENITH ELECTRONICS CORPORATION, )
)
Plaintiff/Counter-Defendant, )
) 01 C 4366
v. )
) Judge George W. Lindberg
WH-TV BROADCASTING CORPORATION, )
)
Defendant/Counter-Plaintiff. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zenith Electronics Corporation ("Zenith") brought this diversity action against defendant WH-TV Broadcasting Corporation ("WH-TV"), alleging a state law claim of breach of contract, and seeking a declaratory judgment as to the terms and conditions of the contract between WH-TV and Zenith. WH-TV counterclaimed, alleging breach of contract. WH-TV also brought third-party claims of promissory and equitable estoppel and breach of warranty against General Instrument Corporation ("GI") and Motorola, Inc. ("Motorola"). Zenith brought a cross-claim for indemnity against GI. Before the court is GI's motion for summary judgment on Zenith's cross-claim for indemnity. For the reasons stated below, the motion is granted in part and denied in part.

**I.  Factual Background[1]**

In 1999 and 2000, Zenith sold set-top boxes ("STBs") to WH-TV, a cable television operator. STBs are a component of a digital wireless cable system, and contain software that

---

[1] The parties have filed motions to strike various submissions made in connection with the motion for summary judgment. The court is issuing separate minute orders addressing these motions today. The facts contained in this opinion reflect the court's rulings on the motions to strike.



decodes and processes a digital signal, allowing the cable subscriber to watch television programming. STBs may also contain software and programming that allow subscribers to access features such as program guides. According to GI, from the outset the STBs did not function properly and lacked certain features, including an enhanced program guide.

On July 17, 2000, GI and Zenith entered into an Asset Purchase Agreement, under which GI purchased certain assets of the Zenith division that was responsible for manufacturing the STBs. Under the Asset Purchase Agreement, GI agreed to assume certain of Zenith's warranty repair obligations, including a twelve-month warranty on the ZEC2 model of STBs sold to WH-TV. The agreement provides that the terms of the warranty on the ZEC2 STBs sold to WH-TV was to be "Standard Terms," which the agreement defines as a repair and replacement warranty for defects in material, design, and workmanship. The court has previously determined that the warranty obligations assumed by GI under the Asset Purchase Agreement apply only to defects that arose from and after the closing date of the asset sale. The asset sale closed on August 8, 2000.

Under the agreement, GI also agreed to assume Zenith's obligations under business contracts "that are to be performed on or after the Closing Date, and excluding any such obligations to be performed prior to the Closing Date." As part of the agreement, Zenith warranted that an attached disclosure schedule contained a complete list of business contracts to which Zenith was a party, which involved obligations of more than $100,000 annually, were otherwise material to the business, or could not be terminated within thirty days. The agreement provided that "in no event will [GI] assume any obligation of [Zenith] that relates to [Zenith's] performance or non-performance of any of its obligations under any Business Contract...prior to

the Closing Date even if claims with respect thereto are asserted after the Closing Date."

Finally, the Asset Purchase Agreement provided that GI would indemnify Zenith from all losses relating to these assumed liabilities.

## II. Analysis

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A. Breach of Warranty

Count I of Zenith's cross-claim seeks indemnification in the event that Zenith is held liable to WH-TV for breach of warranty for failure to perform repairs on the STBs following the closing date of the asset sale. In an order entered today resolving GI's and WH-TV's cross-motions for summary judgment, the court has found that WH-TV has not offered evidence of any defect occurring after the closing date for which GI might be liable under the Asset Purchase Agreement. Since there are no defects which could be found to be covered by the warranty GI assumed under the Asset Purchase Agreement, there can be no breach of warranty for which

Zenith can seek indemnification. GI's motion for summary judgment is granted as to Count I of Zenith's cross-claim.

**B.     Enhanced Program Guide**

Count II of Zenith's cross-claim seeks indemnification in the event that Zenith is held liable to WH-TV for failing to provide an enhanced electronic program guide. WH-TV has alleged that during the time it was negotiating the purchase of STBs from Zenith, and prior to the time WH-TV submitted its first purchase order for the STBs, Zenith agreed to supply a program guide with a seven-day look-ahead menu. For the purpose of this motion for summary judgment, the court must determine whether there is evidence that delivery of the enhanced program guide could have been contemplated to occur after the closing date of the asset sale. If so, a jury could find that the obligation to provide an enhanced program guide was an obligation under a Zenith business contract that was to be performed on or after the closing date, which GI assumed under the Asset Purchase Agreement, and for which Zenith could seek indemnification.

In support of its argument that delivery of the enhanced program guide was not contemplated after the closing date, GI points to the testimony of the former Vice President and General Manager of Zenith's STB division, that Zenith initially promised a delivery date for the enhanced program guide of December 1999. GI argues that since the promised delivery date was before the closing date of the asset sale, the obligation to provide an enhanced program guide was an obligation that GI did not assume.

Zenith responds with evidence that on July 19, 1999, the national sales manager for Zenith's STB division wrote to WH-TV that Zenith would provide the enhanced program guide "in a timely manner," and that it would specify a delivery date on the enhanced program guide by

4

July 23, 1999. Zenith has offered evidence that no further discussions regarding the delivery date took place, and no delivery date was agreed upon. An internal Zenith e-mail dated July 21, 1999 estimates that the earliest possible delivery date for the enhanced program guide was December 6. Zenith also offers an April 26, 2000 document titled "WHTV/Zenith Program Review" that states that delivery of the enhanced program guide was "to be determined and dependent on 3rd generation set top box development program." The court concludes that an issue of fact exists as to whether a delivery date was set for the enhanced program guide.

The court next examines whether, even accepting Zenith's position that no delivery date was set, delivery of the enhanced program guide could not have been contemplated to occur after the closing date. According to Zenith, it only promised to provide the guide in a timely manner. Under Illinois' version of the Uniform Commercial Code, when no time for delivery is agreed upon, that time shall be a reasonable time. 810 ILCS 5/2-309(1). GI observes that in July 1999, WH-TV notified Zenith that it considered the enhanced program guide to be "important so as to launch a competitive service." Under those circumstances, argues GI, even if the court finds that Zenith did not promise to deliver the program guide by December 1999, the court should find that, as a matter of law, delivery after the closing date of the asset sale would have been neither "timely" nor "reasonable."

The question of what constitutes a reasonable time under the circumstances of this case is a question of fact that the court cannot resolve on summary judgment. Drawing all reasonable inferences in Zenith's favor, as the court must at this stage, the court concludes that it is possible that a jury could find that GI assumed Zenith's obligation to provide an enhanced program guide, and that Zenith is entitled to indemnification on WH-TV's claim relating to the guide. GI's

5

motion for summary judgment is denied as to Count II of Zenith's cross-claim.

## C. Software Modifications

Count III of Zenith's cross-claim seeks indemnification in the event Zenith is held liable for what it characterizes as a breach of a May 2000 agreement to modify the STBs to allow them to be used with STBs from other manufacturers. Specifically, Zenith's cross-claim alleges that in May 2000, it agreed to modify its STBs to facilitate WH-TV's use of STBs from other vendors "that required a conditional access system ('CAS') different from the system that was initially deployed by WHTV in its network." Zenith goes on to allege that "[a]ccording to WHTV, the set-top boxes from other vendors required a CAS that generated certain service information ('SI') tables in accordance with certain DVB standards that were published sometime in or after 1998." Zenith then alleges that "[u]nder its original contract with WHTV, Zenith's set-top boxes were not required to receive or process SI tables generated in accordance with certain DVB standards that were published sometime in or after 1998....The contract that was formed for the purchase and sale of the set-top boxes did not require Zenith to deliver set-top boxes that could process such SI tables in such manner."

On March 25, 2003, this court held that, as a matter of law, Zenith had an obligation to supply WH-TV with STBs that complied with the 1998 DVB standards, and that Zenith breached that obligation. Zenith now urges the court to read its cross-claim as merely alleging that it had no obligation prior to May 2000 to modify its STBs to allow them to be used with STBs that required a CAS different from the system that was initially deployed by WH-TV, and ignore the intertwined allegations that it was not required to supply STBs that complied with the 1998 DVB standards. However, reading Zenith's allegations together as a whole, it is clear that when Zenith

6

refers to STBs that required a "different" CAS, the "difference" is that the other vendors' conditional access systems generated SI tables in accordance with the 1998 DVB standards. The court has already determined that under its original agreement with WH-TV, Zenith was required to supply STBs that generate SI tables in accordance with the 1998 DVB standards. Therefore, any subsequent agreement by Zenith to modify its STBs to allow them to be used with other manufacturers' STBs that generate SI tables in accordance with the 1998 DVB standards was merely an effort to remedy its non-performance of its original obligation to provide DVB-compliant STBs. As such, the May 2000 agreement to modify the STBs was not an obligation that GI assumed under the Asset Purchase Agreement.

Moreover, even if Count III of Zenith's cross-claim were not foreclosed by this court's prior order, Zenith has not supported its claim that its May 2000 agreement to modify its STBs constituted a valid new agreement with WH-TV. Under the pre-existing duty rule, a promise "to perform a duty that is already owed under an existing contract is not consideration, and, thus, a modification to the contract is unenforceable." Contempo Design, Inc. v. Chicago & N.E. Ill. Dist. Council of Carpenters, 226 F.3d 535, 550 (7th Cir. 2000). An exception to the pre-existing duty rule is that a promisee may undertake to do something in addition to what it is already obligated to do, as long as additional consideration is given. Id.

If, as Zenith argues, its May 2000 promise to modify its STBs was a new undertaking that it did not already owe WH-TV, it is not enforceable unless new consideration was given. Zenith has offered no evidence that WH-TV provided any new consideration in exchange for such a new agreement. Accordingly, even if its May 2000 promise constituted a new and independent agreement, it was not an enforceable one.

Finally, even if Zenith's May 2000 promise to modify its STBs created a valid new contract with WH-TV, Zenith has not shown that it disclosed this new contract to GI in the Asset Purchase Agreement. The Asset Purchase Agreement provides that:

> Section 2.16(a) of the Disclosure Schedule...contains a true and complete list of each of the following Contracts or other arrangements...to which [Zenith] is a party with respect to the Business...:
>
> ...
>
> (viii) all other Contracts...with respect to the Business that (A) involve obligations (contingent or otherwise) of, or payments or potential payments, pursuant to the terms of any such Contract by or to, [Zenith] of more than $100,000 annually or are otherwise material to the Business or (B) cannot be terminated within thirty (30) days after giving notice of termination without resulting in any material cost or penalty to [Zenith].

GI argues that Zenith did not disclose its purported May 2000 agreement with WH-TV in Section 2.16(a) of the Disclosure Schedule, and that, accordingly, GI did not assume any of Zenith's obligations under that agreement.

Zenith points to three disclosures in the Asset Purchase Agreement that it contends disclose its May 2000 agreement. First, it notes that under its disclosure of outstanding supply and manufacturing agreements, Zenith disclosed WH-TV's May 25, 1999 purchase order for STBs. Zenith argues that because it is undisputed that it had completed delivery of all the STBs ordered under the May 25, 1999 purchase order before the asset sale, the reference to the purchase order in the Asset Purchase Agreement necessarily implied that some other obligations as to those STBs remained outstanding. However, the court disagrees that the disclosure of a May 25, 1999 purchase order would fairly place GI on notice that a year later Zenith had entered into an entirely separate agreement relating to the STBs ordered under that purchase order.

Zenith also notes that under its disclosure of license agreements in which it was the

8

licensee, Zenith disclosed a "Letter Agreement with Nagra regarding CAS software for Z12C set-top box." Zenith argues that the referenced letter agreement was made pursuant to the May 2000 agreement with WH-TV to modify the STBs to allow them to be used with STBs that had a different CAS. However, that disclosure only places GI on notice that Zenith licensed software for the STBs from Nagra, and does not place GI on notice of any agreement with WH-TV.

Finally, Zenith points to its disclosure regarding legal proceedings, in which it states:

> In May, 2000 WHTV (Puerto Rico) stopped purchasing television set top boxes (STBs" [sic]) and promoting NWS products to customers until certain identified software bugs in STBs were fixed. On June 20, 2000 Zenith received a letter from Jorge P. Sala, attorney for WHTV relating to WHTV's expectation after Closing. A copy of this letter has been provided to [GI]. As of June 28, 2000 Zenith believes that all such software bugs have been fixed. [Zenith] and WHTV are working to resolve any open issues.

Zenith argues that this disclosure placed GI on notice that there were issues between Zenith and WH-TV that had not been resolved. However, nothing in this disclosure mentions any new agreement by Zenith to modify the STBs, and indeed the disclosure implies that Zenith would resolve any outstanding issues. The court concludes that Zenith did not disclose any new agreement to modify the STBs in the Asset Purchase Agreement.

Zenith contends that there is a question of fact as to whether Zenith was even required to disclose its purported May 2000 agreement in the Asset Purchase Agreement. The relevant portion of the Asset Purchase Agreement discloses only contracts that involved obligations exceeding more than $100,000 annually, or were otherwise material, or could not be terminated within thirty days without resulting in material cost to Zenith. Zenith argues that the court should deny GI's motion for summary judgment as to Count III because GI has failed to offer any evidence regarding the anticipated cost of making the software modifications, or showing

9

whether an agreement to make the software modifications could have been canceled within thirty days.

Zenith's argument is misplaced. GI has met its initial burden of demonstrating that no material issue exists for trial on this issue, with evidence that WH-TV viewed its ability to use STBs of other manufacturers in its system as important, and believed that its inability to do so would result in significant damages. In addition, GI argues that Zenith's inability to deliver DVB-compliant STBs shows that any agreement to modify the STBs to allow WH-TV to use them with STBs of other manufacturers could not have been terminated within thirty days. The burden then shifted to Zenith to show that a material dispute exists as to whether its purported May 2000 agreement involved an obligation exceeding more than $100,000, was otherwise material, or could not be terminated within thirty days without resulting in material cost to Zenith. Zenith has made no such showing. Accordingly, GI's motion for summary judgment as to Count III of Zenith's cross-claim is granted.

**ORDERED:** GI's motion for summary judgment on Zenith's cross-claim for indemnity [443-1] is granted in part and denied in part.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: JUN 1 8 2003

10