# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 6/25/2003 |
| **CASE TITLE** | Zenith Electronics Corp. vs. WH-TV Broadcasting Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Zenith's motion in limine with respect to the Testimony of Peter Shapiro (447-1) is granted in part and denied in part. The motion is granted as to evidence of WH-TV's future lost profits after 2002, and denied as to evidence of WH-TV's future lost profits through 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 27 2003 | |
| | Notified counsel by telephone. | | date docketed | 551 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 6/25/2003 | |
| | | 03 JUN 26 PM 3:15 | date mailed notice | |
| GL | courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED JUN 27 2003

| | | |
|---|---|---|
| ZENITH ELECTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | 01 C 4366 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| WH-TV BROADCASTING CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Zenith Electronics Corporation ("Zenith") has moved in limine to exclude the testimony of Peter Shapiro, the damages expert of WH-TV Broadcasting Corporation ("WH-TV"). Shapiro has opined that, if set-top boxes supplied by Zenith to WH-TV had not been defective, and had WH-TV been able to launch its digital television service as planned, WH-TV's subscriber base would have increased to 26,000 to 31,000 by 2008. Shapiro has predicted the amount of future profits WH-TV would have lost, based on the number of future subscribers he predicts WH-TV would have had. Zenith urges the court to bar Shapiro's testimony on three grounds: (1) that his opinion is inadmissible under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); (2) that the new business rule bars the lost profits damages about which Shapiro opines; and (3) that Shapiro's calculation of damages includes damages that were not reasonably foreseeable. The court addresses each in turn.

**I. Reliability Under Daubert**

Zenith first urges the court to exclude Shapiro's testimony on the ground that his opinion is unreliable, and therefore inadmissible under Daubert. Federal Rule of Evidence 702 provides that:

55

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Daubert, the court is required to perform a gatekeeping function by examining the expert's methodology. See Daubert, 509 U.S. at 592-93. Daubert identifies nonexhaustive factors that the court may consider in determining whether an expert's testimony is reliable: (1) whether the theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community." Daubert, 509 U.S. at 593-94. The Daubert test has been applied to expert lost profits evidence, such is at issue in this case. See Target Mkt. Publ'g, Inc. v. ADVO, Inc., 136 F.3d 1139, 1142-44 (7th Cir. 1998). As the proponent of Shapiro's testimony, WH-TV bears the burden of establishing its admissibility by a preponderance of the evidence. See Abdishi v. Philip Morris, No. 98 C 1310, 1999 WL 756054, at *2 (N.D. Ill. Sept. 7, 1999).

Zenith argues that Shapiro's opinion that WH-TV would have had 26,000 to 31,000 subscribers by the end of 2008 absent Zenith's breach, is based on improper, speculative assumptions. Shapiro arrived at this opinion by first projecting the growth of WH-TV's competitor, DirecTV, in Puerto Rico through 2008, then predicting the percentage of that projected growth WH-TV would have captured had it been able to launch its digital service as planned. Zenith takes issue with the reliability of Shapiro's methodology in both these steps.

Zenith first challenges Shapiro's calculation of the projected growth of DirecTV in WH-TV's service area for the years 2002 through 2008. Based on a review of data regarding

2

DirecTV's performance island-wide in Puerto Rico between 1999 and mid-2002, Shapiro offers an opinion as to DirecTV's projected growth through 2008. According to Zenith, Shapiro has not objectively supported his method of extrapolating DirecTV's growth into the future, based merely on three years of data.

Shapiro testified that he used actual data of the growth rate of DirecTV's penetration into the Puerto Rican market through July 2002, which revealed that DirecTV's penetration had grown at a very high rate. Shapiro then forecast that DirecTV's growth rate from July 2002 through 2008 would level off, from 36% in 2002 to 3% in 2008. Shapiro testified that his general awareness of the growth pattern of satellite services such as DirecTV's, along with his experience in the industry, informed his projection of DirecTV's growth rate in Puerto Rico from 2002 through 2008. Shapiro did not actually compile data from other markets and compare them to his projected growth rate for DirecTV in Puerto Rico, although he maintains a database of such information.[1] WH-TV explains that such a comparison study would not have been useful because Puerto Rico is a unique market.

WH-TV argues that Zenith's objection to Shapiro's reliance on data relating to DirecTV's actual market penetration from 1999 to 2002, and failure to use data from other markets, goes to the weight to be given to Shapiro's opinion, and not its admissibility. The court disagrees, at least as to Shapiro's projection of DirecTV's growth beyond 2002. Since Shapiro used actual data of DirecTV's growth through 2002, any assumptions he made regarding DirecTV's growth

---

[1] WH-TV now has submitted just such a comparison, as an exhibit to its response to Zenith's motion in limine. The comparison was first provided to Zenith in April 2003. Expert discovery between WH-TV and Zenith closed long before April 2003, and therefore the court disregards this exhibit.

3

in that period are reliable. However, Shapiro did not test his methodology for predicting DirecTV's growth after 2002, and the court is not persuaded by his explanation for his failure to do so. Although the market in Puerto Rico may well have differed from other markets, Shapiro could have specifically laid out the data relating to the growth of satellite services in other markets (which he acknowledged were readily available), and explained why differences in those markets would compel different results in Puerto Rico. Instead, Shapiro merely states that data from other markets generally "informed" his opinion, and cites to his experience in the industry. Shapiro has not supported his projection of DirecTV's growth beyond 2002 with a reliable analysis. See Clark v. Takata Corp., 192 F.3d 750, 759 n.5 (7th Cir. 1999) (even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert.").

Zenith also challenges the reliability of Shapiro's projection of the percentage of DirecTV's projected growth WH-TV would have captured had it not been delayed in launching its digital television service. Shapiro projected that WH-TV would have initially captured 15% of DirecTV's growth during a "transition phase," when DirecTV offered only one local station and WH-TV was just beginning to convert its analog subscribers. He projected that WH-TV then would have captured 30% of DirecTV's growth during a period when WH-TV was actively marketing its service to new subscribers and DirecTV still offered only one local station. Shapiro projected that WH-TV then would have captured 20%, and eventually 10%, of DirecTV's growth, as DirecTV increased its local programming.

Shapiro states that he estimated the extent of WH-TV's market penetration as compared

4

to DirecTV's, by balancing factors such as the number of local stations offered, antenna size, local versus non-local orientation of programming, customer payment procedures, channel capacity, pricing, advertising resources, and local distrust of satellite service as a result of an earlier failure of another satellite provider in Puerto Rico. In his deposition, Shapiro again noted that the Puerto Rico market was unique, and stated that it would not have been relevant to examine other markets in which the Multipoint Multichannel Digital System ("MMDS") type of service WH-TV offered was competing against satellite service. Shapiro characterized his projected market share numbers as "a forecast based on [his] judgment."

Shapiro did compare his conclusions as to the portion of DirecTV's growth he predicted WH-TV would have captured in 2002, against actual data from a market in Mexico. In that comparison, Shapiro observed that the Mexican market had an MMDS operator with "less compelling service" than WH-TV (the Mexican operator offered analog service), and had more intense competition from both wired cable and satellite providers. The Mexican MMDS operator achieved an 8.6% share of households receiving multi-channel services. Shapiro had forecast that WH-TV would have achieved only 4.3% of Puerto Rico's multi-channel services subscribers in 2002. Based on his comparison with the results from the Mexican market, Shapiro reasoned that his predictions regarding WH-TV were reasonable and conservative.

Shapiro's comparison between the results of the Mexican market and his prediction regarding how much of the Puerto Rican market WH-TV would have captured in 2002 shows that Shapiro's methodology was reliable in his predictions through 2002. However, as with his forecast of DirecTV's growth after 2002, Shapiro does not compare his predictions relating to WH-TV's growth after 2002 with results from any other market. Shapiro again justifies this

5

decision by stating that such a study would not have been useful because there are no comparable markets. However, there apparently are markets in which an MMDS provider competed against a satellite provider, even if those markets differed significantly from the Puerto Rican market at issue here. Shapiro could have tested his predictions relating to WH-TV from 2002 through 2008 by comparing WH-TV's situation to the manner in which competition between MMDS and satellite providers evolved in other markets, and noting how the differences would affect his conclusions regarding the Puerto Rican market.

The court is unable to determine the methodology that serves as the basis for Shapiro's opinion as to what WH-TV's growth would have been after 2002. Therefore, the court concludes that Shapiro's opinions regarding the percentage of DirecTV's growth WH-TV would have captured after 2002 are not reliable. Shapiro's testimony relating to WH-TV's future lost profits after 2002 is excluded.

**II.   New Business Rule**

The court next turns to the question of whether evidence of future lost profits through 2002 also should be excluded under the new business rule. Under Illinois law, a new business (or an existing business with a new product) cannot recover lost profits. Kinesoft Dev. Corp. v. Softbank Holdings Inc., 139 F. Supp. 2d 869, 908 (N.D. Ill. 2001). The reason for this rule is that a new business cannot show what its profits are with any degree of certainty. See SK Hand Tool Corp. v. Dresser Indus., Inc., 672 N.E.2d 341, 348 (Ill. App. Ct. 1996).

According to Zenith, WH-TV's digital television service was a new product. Zenith observes that WH-TV's digital service required an understanding of different technology than analog service, and used equipment supplied by new vendors. In addition, WH-TV's digital

6

service required substantially more capital than its analog service had required. The digital technology was limited to subscribers with a clear line of sight between WH-TV's head-end and the subscribers' antenna, affecting the size of the available market and the marketing strategy to be used. Finally, Zenith argues that WH-TV's goal of enrolling many more new subscribers than it had ever had compels the conclusion that WH-TV's digital service was a new business.

WH-TV notes that it had been providing analog television service in the same market in which it intended to offer digital service. According to WH-TV, digital service was merely a superior form of television service, with additional channels and better picture quality, that WH-TV believed would be attractive to new customers in its market. Thus, digital television service was not a new product, but merely an upgrade of the service WH-TV was already providing.

The court agrees with WH-TV. WH-TV began as a television service provider, and continued to provide television service when it implemented its plan to convert to digital service. While there may have been differences between the analog service WH-TV had previously offered and the digital service it subsequently offered, "'different' is not necessarily 'new.'" See Alper v. Altheimer & Gray, No. 97 C 1200, 2002 WL 31133287, at *41 (N.D. Ill. Sept. 26, 2002). The court concludes that WH-TV's digital television service was not a new business.

### III. Reasonable Foreseeability

Finally, Zenith urges the court to bar Shapiro's testimony on the basis that Shapiro's damages calculation includes damages that Zenith could not have reasonably foreseen. Zenith argues that since WH-TV did not purchase more set-top boxes than it required to convert its existing analog subscribers to digital service (a number that never exceeded 7,400), Zenith could not be expected to foresee that defects in those set-top boxes could cause it to lose profits on set-

7

top boxes for 30,000 subscribers. Zenith also argues that it could not be expected to have foreseen that DirecTV would capture the market and cause WH-TV to permanently lose its competitive position.

WH-TV has presented evidence that when WH-TV requested a proposal from Zenith in August 1998, WH-TV requested a quote for 43,000 set-top boxes, with 15,000 needed the first year and 7,000 per year for the four following years. In September 1998, Zenith responded with a price quote for 60,000 set-top boxes.

The court concludes that WH-TV has presented sufficient evidence to raise a question of fact as to whether Zenith could reasonably have foreseen that the defects in its set-top boxes could cause WH-TV to lose sales to future subscribers. See Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1362 (7th Cir. 1996) (interpreting Wisconsin law) (stating that determination as to whether parties contemplated future profits was issue of fact, and there was no basis to conclude that evidence as to the foreseeability of plaintiff's lost future profits should be excluded as a matter of law); see also Outboard Marine Corp. v. Babcock Industries, Inc., No. 91 C 7247, 1995 WL 296963, at *2 (N.D. Ill. May 12, 1995) (noting that foreseeability is a question that is generally left for the jury to resolve, and that foreseeability should be decided as a matter of law only where the facts demonstrate that the plaintiff could never be entitled to recovery). In addition, especially given that the agreement between Zenith and WH-TV specified delivery times for the set-top boxes, a jury could find that Zenith should have reasonably foreseen that WH-TV would lose its competitive position if functioning set-top boxes were not delivered on time.

**ORDERED:** Zenith's Motion in Limine with Respect to the Testimony of Peter Shapiro

[447-1] is granted in part and denied in part. The motion is granted as to evidence of WH-TV's future lost profits after 2002, and denied as to evidence of WH-TV's future lost profits through 2002.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: JUN 2 5 2003