# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 8/6/2003 |
| **CASE TITLE** | Zenith Electronics Corporation vs. WH-TV Broadcasting Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] WH-TV's motion for reconsideration of the Court's Order of June 25, 2003, Regarding the Testimony of Dr. Peter Shapiro (559-1) is denied. WH-TV's motion for clarification of the Court's Order of June 25, 2003, regarding the Testimony of Dr. Peter Shapiro (559-2) is granted. Zenith's motion to reconsider and Bar the Testimony of Peter Shapiro in its entirety (604-1) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 0 7 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | | 629 |
| | Mail AO 450 form. | CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 AUG -6 PM 4:19 | | |
| SLB | courtroom deputy's initials | FILED ZOJ EXCUJING 1-03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZENITH ELECTRONICS CORPORATION,   )
                                  )
    Plaintiff/Counter-Defendant,  )
                                  )   01 C 4366
        v.                        )
                                  )   Judge George W. Lindberg
WH-TV BROADCASTING CORPORATION,   )
                                  )
    Defendant/Counter-Plaintiff.  )

DOCKET
AUG 0 7 2003

**MEMORANDUM OPINION AND ORDER**

On June 25, 2003, this court granted in part and denied in part Zenith Electronics Corporation's ("Zenith") motion in limine to exclude the testimony of WH-TV Broadcasting Corporation's ("WH-TV") damages expert Peter Shapiro. Zenith and WH-TV both move for reconsideration of that ruling. For the reasons stated below, WH-TV's motion for reconsideration is denied, and Zenith's motion for reconsideration is granted in part and denied in part.

Shapiro had opined that, if set-top boxes ("STBs") supplied by Zenith to WH-TV had not been defective, and had WH-TV been able to launch its digital television service as planned, WH-TV's subscriber base would have increased to 26,000 to 31,000 by 2008. Shapiro then predicted the amount of future profits WH-TV would have lost, based on the number of future subscribers he predicted WH-TV would have had. Shapiro arrived at this opinion by first projecting the growth of WH-TV's competitor, DirecTV, in Puerto Rico through 2008, then predicting the percentage of that projected growth WH-TV would have captured had it been able to launch its digital service as planned.

The court granted Zenith's motion as to evidence of WH-TV's future lost profits after

629

2002, and denied it as to evidence of WH-TV's future lost profits through 2002. Specifically, the court found that Shapiro's opinions regarding WH-TV's future lost profits after 2002 were not reliable because Shapiro did not test his methodology for predicting DirecTV's growth after 2002. The court found, however, that Shapiro's methodology for arriving at opinions regarding WH-TV's growth through 2002 was reliable, because it used DirecTV's actual data, and compared his prediction regarding WH-TV's market share in 2002 with the results in a market in Mexico. WH-TV moves for reconsideration of the portion of the court's order that excludes Shapiro's testimony regarding future lost profits after 2002. Zenith moves for reconsideration of the portion of the order that allows WH-TV to present evidence of lost profits through 2002.

WH-TV first takes issue with the court's finding that Shapiro did not test his methodology for predicting DirecTV's growth after 2002. In connection with that finding, the court noted that Shapiro had not actually compiled any data from other markets to use in comparing his projected growth rate for DirecTV. As in its original briefs, WH-TV points to Shapiro's testimony that he is generally aware of the growth of digital broadcast service in the mainland United States, and that he reviewed those growth numbers. However, Shapiro also testified that he did not use those numbers "mathematically or arithmetically to tie into [this case]," and that he only "unspecifically" referred to them. Since Shapiro did not include such data in his report, and WH-TV did not otherwise disclose it prior to the close of discovery, Zenith cannot test Shapiro's methodology. The court declines to reconsider this finding.

WH-TV and Zenith both argue that the court erred in its evaluation of Shapiro's comparison of his predictions regarding WH-TV's growth with results from a market in Mexico. WH-TV takes issue with the court's finding that Shapiro's opinion regarding WH-TV's growth

after 2002 was not reliable because he only compared the Mexican results with his predictions of WH-TV's market share in 2002, without comparing his predictions relating to WH-TV's growth after 2002 with results from any other market. The court need not address WH-TV's argument on this point, however, because it has already determined that Shapiro's starting point for his prediction relating to WH-TV's future growth – his prediction relating to DirecTV's growth after 2002 – was not reliable. Thus, if Shapiro's methodology for predicting DirecTV's growth during that period was not reliable, his conclusions regarding the portion of that growth WH-TV would have captured cannot be reliable either.

The court turns to Zenith's argument that the court erred in finding that Shapiro's predictions relating to WH-TV's growth through 2002 were reliable. Shapiro projected that WH-TV would have initially captured 15% of DirecTV's growth during a "transition phase," when DirecTV offered only one local station and WH-TV was just beginning to convert its analog subscribers. He projected that WH-TV then would have captured 30% of DirecTV's growth during a period when WH-TV was actively marketing its service to new subscribers and DirecTV still offered only one local station. Shapiro projected that WH-TV then would have captured 20%, and eventually 10%, of DirecTV's growth, as DirecTV increased its local programming.

Shapiro did not test this methodology against the experience of any other market. Shapiro explained in his deposition that the Puerto Rican market was unique, and that there were no other comparable markets. Although he did not test his methodology against the experience of the Mexican market because that market was "not directly relevant" to the Puerto Rican market, Shapiro did compare his conclusions as to the portion of DirecTV's growth he predicted WH-TV would have captured in 2002 against actual data from the Mexican market. In that

3

comparison, Shapiro observed that the Mexican market had an Multipoint Multichannel Digital System ("MMDS") operator with "less compelling service" than WH-TV (the Mexican operator offered analog service), and had more intense competition from both wired cable and satellite providers. The Mexican MMDS operator achieved an 8.6% share of households receiving multi-channel services. Shapiro had forecast that WH-TV would have achieved only 4.3% of Puerto Rico's multi-channel services subscribers in 2002. Based on his comparison with the results from the Mexican market, Shapiro reasoned that his predictions regarding WH-TV were reasonable and conservative.

Zenith argues that the court erred in crediting this comparison to the extent that it did, because Shapiro's comparison is only offered to demonstrate that his results are reasonable, a demonstration that is not relevant to a determination of whether Shapiro's methodology was reliable. Zenith also argues that Shapiro's use of a "snapshot" comparison between his prediction of WH-TV's market share in a single year (2002) with the Mexican results in the same year does not test whether the trend from 1999 through 2008 that Shapiro predicts for WH-TV is comparable to the trend in the Mexican market.

The court has reconsidered its conclusions regarding this portion of its ruling, and agrees with Zenith. The court's focus here "must be solely on principles and methodology, not on the conclusions they generate." See Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir. 2002). It is clear from Shapiro's report and testimony that his comparison of his projection of WH-TV's market share for 2002 with the Mexican results did not test Shapiro's methodology. While it may be useful to perform such a cross-check on the results after the fact, it is insufficient to validate that the methodology used to generate the results is reliable.

4

The court next re-examines the methodology Shapiro used in projecting WH-TV's market share through 2002 to determine whether it is reliable, despite not having been tested against the experience of another market. Shapiro stated that he arrived at his estimates by balancing factors such as the number of local stations offered, antenna size, local versus non-local orientation of programming, customer payment procedures, channel capacity, pricing, advertising resources, and local distrust of satellite service as a result of an earlier failure of another satellite provider in Puerto Rico. However, Shapiro does not explain how he weighed these factors and translated them into the 15%, 30%, 20%, and 10% portions of DirecTV's growth he forecasts. Indeed, in his deposition Shapiro characterized these projected market share numbers as "a forecast based on [his] judgment."

As the Supreme Court has observed, "[t]rained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Since Shapiro does not explain how he arrived at the percentages he presents in his opinion, the court concludes that "there is simply too great an analytical gap between the data and the opinion proferred." See id. Shapiro's testimony regarding WH-TV's lost profits from new subscribers through 2002 is also barred.

Finally, WH-TV asks the court to clarify that it is not precluded from presenting evidence of profits WH-TV would have earned from its existing subscribers, including projections of subscriber growth attributable to the growth in households in WH-TV's signal area during that time. In his report, Shapiro states that by June 2002, WH-TV's penetration of households within

5

its signal area was stable at approximately 1.1%. He projects that this level will persist through 2008, resulting in a growth of subscribers at the same rate as the growth of households. He notes that WH-TV's average monthly subscriber churn (the number of subscribers that disconnect, in proportion to the number of subscribers being served during a given time period) was 3.8% in 1999, 3.7% in 2000, 2.6% in 2001, and 3.3% in 2002. Shapiro assumes that WH-TV's monthly churn rate through 2008 will remain at 3.2%, which he recognizes is an "optimistic assumption," given WH-TV's weak market position. Since DirecTV entered the market in mid-1999, the historical data on which Shapiro relies in making these forecasts cover a period during which WH-TV was competing against DirecTV. The court finds that Shapiro's opinions relating to existing subscribers are reliable and may be offered at trial.

**ORDERED:** WH-TV's Motion for Reconsideration of the Court's Order of June 25, 2003, Regarding the Testimony of Dr. Peter Shapiro [559-1] is denied. WH-TV's Motion for Clarification of the Court's Order of June 25, 2003, Regarding the Testimony of Dr. Peter Shapiro [559-2] is granted. Zenith's Motion to Reconsider and Bar the Testimony of Peter Shapiro in its Entirety [604-1] is granted in part and denied in part.

ENTER:

*George W. Lindberg*
George W. Lindberg
Senior U.S. District Judge

DATED: AUG 0 6 2003

6