# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4366 | **DATE** | 8/6/2003 |
| **CASE TITLE** | Zenith Electronics Corporation vs. WH-TV Broadcasting Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] WH-TV's motion to compel production against Motorola General Instrument (525) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 7 2003 date docketed | |
| | Docketing to mail notices. | | | 630 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZENITH ELECTRONICS CORPORATION, | ) | |
| | ) | **DOCKETED** |
| Plaintiff/Counter-Defendant, | ) | |
| | ) 01 C 4366 | AUG 0 7 2003 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| WH-TV BROADCASTING CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

WH-TV Broadcasting Corporation ("WH-TV") moves to compel the production of documents identified by Motorola, Inc. ("Motorola") and General Instrument ("GI") as protected by the attorney-client privilege or work product doctrine. The court has reviewed Motorola's and GI's privilege log and, where necessary, has conducted an in camera review of documents referenced in the log.[1] For the following reasons, WH-TV's motion is granted in part and denied in part.

### I.     Attorney-Client Privilege

Where legal advice of any kind is sought from a professional legal adviser in his or her capacity as such, communications relating to that purpose, made in confidence by the client, are protected by the attorney-client privilege, unless the privilege is waived. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). The purpose of the attorney-client privilege is "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" Swidler & Berlin v.

---

[1] WH-TV has withdrawn its motion as to Group 2 (attached non-privileged e-mails); Group 6, Entry 9 (attached non-privileged e-mails); and Groups 23, 49, and 61.

630

United States, 524 U.S. 399, 403 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). The party claiming the privilege bears the burden of proving its essential elements. Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 531 (N.D. Ill. 2003).

### A. Zenith Documents Predating Common Interest

Zenith sold certain assets of its Network Systems Division to GI in August 2000, and transferred its documents relating to that division to GI and Motorola at that time. GI and Motorola claim the attorney-client privilege as to privileged Zenith documents that it received in the asset purchase. WH-TV argues that GI and Motorola cannot claim the attorney-client privilege as to privileged Zenith documents that predate any common interest between Zenith and GI and Motorola. Motorola and GI respond that the Asset Purchase Agreement that governed the asset purchase provided that GI purchased from Zenith "[a]ll intangible personal property to the extent used or held for use in the conduct of the Business (including, without limitation, ... all rights, *privileges*, claims, causes of action and options relating to or pertaining to the Business or the Assets)..." (emphasis added).

The court disagrees that the attorney-client privilege is a corporate asset that can be sold. "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985). However, the mere transfer of some assets from one corporation to another – as was done in this case – does not transfer the attorney-client privilege. See, e.g., In re In-Store Adver. Secs. Litig., 163 F.R.D. 452, 458 (S.D.N.Y. 1995); 124 F.R.D.

662, 664; Sobol v. E.P. Dutton, Inc., 112 F.R.D. 99, 103 (S.D.N.Y. 1986).

GI and Motorola contend that In re In-Store Advertising Secs. Litig. is distinguishable because in that case, unlike here, there was no indication that the parties contractually agreed to transfer the attorney-client privilege. The court finds this distinction unconvincing. GI's and Motorola's position would allow anyone to evade waiver of the privilege, despite the transfer of privileged documents to a third party, merely by agreeing to transfer the privilege and accepting consideration for it.

Nor is the court persuaded by GI's and Motorola's reliance on Rhode Island Depositors Econ. Prot. Corp. v. Mapleroot Dev. Corp., 710 A.2d 167 (R.I. 1998). In that case, the Rhode Island Supreme Court considered the right of the Rhode Island Depositors Economic Protection Corporation (DEPCO) to invoke the attorney-client privilege of a credit union, whose assets DEPCO had purchased under an agreement that transferred the credit union's privileges to DEPCO. Id. at 168-69. The court held that DEPCO had acquired the credit union's attorney-client privilege in the transaction. Id. at 171. However, unlike in this case, DEPCO was established by state legislation, and the court construed DEPCO's enabling legislation to allow DEPCO to acquire failed lenders' attorney-client privileges in order to accomplish its statutory mission of aiding failed institutions in making prompt payments to depositors. See id. at 170-71.

The court concludes that Zenith's attorney-client privilege simply was not a property right that could be sold. Accordingly, the court finds that GI and Motorola cannot invoke the attorney-client privilege for the following Zenith documents that were transferred to GI and Motorola: Group 9, Entry 1 (6/29/00 e-mails from Tom Hagensick to Peter Slate); the first two e-mails in Group 9, Entry 2 (two 6/29/00 e-mails from Hagensick to Slate); the first two e-mails in Group 9,

Entry 3 (two 6/29/00 e-mails from Hagensick to Slate); Group 35 (2/23/99 draft contract with notes); and Group 72 (6/14/00 e-mail from Hagensick to Slate).

### B. Communications Not Directed to an Individual

WH-TV also contests GI's and Motorola's claim that certain communications from attorneys to their files are protected by the attorney-client privilege, even though the communications were not directed to an individual. A memorandum prepared as a record of a communication between an attorney and a client, where the communication was for the purpose of rendering legal advice, is protected by the attorney-client privilege, just as is the underlying communication. See Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., No. 95 C 673, 1996 WL 732522, at *5 (N.D. Ill. 1996). However, an attorney's memorandum to file that does not record such an attorney-client communication is not protected by the attorney-client privilege.[2] Id.

The court finds that the following attorney communications to file are protected by the attorney-client privilege, as they record confidential conversations between attorney and client: Group 74 (5/9/00 notes of Paul Fleck regarding discussion with Dick Smith); and Group 76 (Fleck's notes regarding discussion with Smith). The court finds that, in the notes contained in Group 75, only the line referencing a conference with Lee Zimmerman and Smith is protected by the attorney-client privilege; the court directs GI and Motorola to produce the remainder of the notes, in redacted form.

GI and Motorola claim that certain draft agreements containing handwritten notes are

---

[2] Such communications could be protected by the work product doctrine. However, GI and Motorola do not claim that the work product privilege applies to these documents, and accordingly that privilege is waived.

4

protected by the attorney-client privilege. "[D]rafts [of agreements] prepared by or commented upon by an attorney necessarily contain legal advice from the attorney as to the wording of the contracts for the benefit of the client, and thus are privileged." McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 255 (N.D. Ill. 2000). The court finds that Groups 96-98, 100-01, 106, and 114 (draft agreements with notes) are protected by the attorney-client privilege, since they are drafts of agreements prepared by, or commented upon by an attorney.

### C. Documents Distributed Outside Control Group

WH-TV next contends that GI and Motorola waived the attorney-client privilege as to certain documents by circulating them too widely. When a corporate document is shown to employees outside the company's "control group," the attorney-client privilege is either inapplicable or is waived. See Trustmark Ins. Co. v. General & Cologne Life Re of Am., No. 00 C 1926, 2000 WL 1898518, at *4 (N.D. Ill. Dec. 20, 2000). An employee is a member of the control group if the employee "is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority...." Consolidation Coal Co. v. Bucyrus-Erie Co., 432 N.E.2d 250, 255 (Ill. 1982). Thus, "an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion ... is properly within the control group." Id. at 258. WH-TV concedes that the following individuals were members of the Motorola/GI control group: William Luehrs, Tom Hagensick, Don Landise, Don Alexander, Chuck Sindelar, Tom Lynch, and Doug Means.

The court finds that the attorney-client privilege is inapplicable or waived as to the

5

following documents, because they were directed to or shown to individuals whom Motorola and General Instrument have failed to establish are a member of a control group: Group 24, Entries 1-3 (e-mail chain beginning with 3/14/01 e-mail and attached draft letter from Matthew Gettinger to Luehrs)[3]; Group 52, Entry 1 (1/02/01 e-mail from Brian Zorc to Charles Fish)[4]; Group 52, Entry 2 (1/10/01 e-mail chain)[5]; Group 52, Entry 3 (1/02/01 e-mail from Zorc to Gettinger)[6]; Group 56, Entry 1 (9/27/02 e-mails from Joe Sullivan to Gettinger, and Gettinger to Sullivan)[7]; Group 56, Entry 2 (9/27/02 e-mails from Sullivan to Gettinger, and Gettinger to Sullivan, 10/1/01 e-mails from Sullivan to Gettinger)[8]; Group 56, Entry 4 (9/27/02 e-mail from Sullivan to Gettinger)[9]; Group 78 (5/9/00 memorandum from Sue J. Hodges to "GI Motorola"); Group 81 (5/23/00 draft agreement from Winston & Strawn to "GI Motorola").

---

[3] These e-mails were copied to an individual with the title "Motorola Manager Technology/Engineering Project." Motorola and GI do not identify the role this employee played.

[4] The e-mail was copied to individuals with the titles "Motorola Manager Technology/Engineering Project" and "Motorola Manager, Engineering." Motorola and GI do not identify the roles these employees played.

[5] The e-mail was copied to individuals with the titles "Motorola Manager Technology/Engineering" and "Motorola Manager, Engineering." Motorola and GI do not identify the roles these employees played.

[6] The e-mail was copied to an individual with the title "Motorola Manager, Engineering." Motorola and GI do not identify the role this employee played.

[7] These e-mails were copied to an individual with the title "Manager, Finance." Motorola and GI do not identify the role this employee played.

[8] These e-mails were copied to an individual with the title "Manager, Finance." Motorola and GI do not identify the role this employee played.

[9] This e-mail was copied to an individual with the title "Manager, Finance." Motorola and GI do not identify the role this employee played.

Nor are the documents in Group 92 protected by the attorney-client privilege. GI's and Motorola's privilege log inaccurately describes these documents as a June 21, 2000 communication from attorney Lee Zimmerman to file, containing draft contract schedule, with notes. In fact, Group 92 contains a June 21, 2000 memorandum from Zenith attorney Peter Slate to Zimmerman and attorney K. Michael Garrett, attaching revised disclosure schedules. The memorandum is copied to three individuals who are not identified in the privilege log. The copied individuals include Jackie Petrovic, who is not listed in GI's and Motorola's schedule that identifies the title and position of individuals in the privilege log. GI and Motorola are ordered to produce the documents in Group 92.

The privilege log also describes the documents in Group 95 inaccurately. The log similarly states that these documents are a June 8, 2000 communication from Zimmerman to file, containing draft contract schedules, with notes. In reality, Group 95 contains a June 8, 2000 memorandum from Slate to Zimmerman and Garrett, attaching revised disclosure schedules. As with Group 92, the memorandum is copied to Petrovic, who is not identified in the privilege log or schedule. GI and Motorola are ordered to produce the documents in Group 95.

### D.  Other Claims of Attorney-Client Privilege

The court finds that the following constitute attorney-client privileged communications: Group 2 (5/25/01 e-mail from Luehrs to Beverly Wyckoff)[10]; Group 3 (4/9/01 e-mail from Luehrs to Gettinger); Group 7, Entry 1 (12/15/00 e-mail from Hagensick to Luehrs); the first document in Group 7, Entry 2 (12/15/00 e-mail from Hagensick to Luehrs); fourth e-mail in Group 9, Entry

---

[10] WH-TV has withdrawn its motion as to the attached non-privileged e-mails in Group 2.

3 (11/10/00 e-mail from Luehrs to Richard Vitkus); Group 12 (6/29/01 e-mail from Luehrs to Gettinger); Group 18, Entry 3 (11/28/01 e-mail chain); Group 28, Entries 1-3 (6/27/01 e-mail chain; 6/28/01 e-mail chain; 6/28/01 draft letter); first four e-mails in Group 28, Entry 8 (6/28/01 e-mail from Don Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); first four e-mails in Group 28, Entry 9 (6/28/01 e-mail from Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); first four e-mails in Group 28, Entry 10 (6/28/01 e-mail from Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); Group 39 (6/13/01 memorandum from Luehrs to Lawrence Benjamin); Group 41 (6/7/01 memorandum from Luehrs to Benjamin); Group 57, Entries 1 and 2 (5/17/01 and 10/24/02 e-mail chains); Group 104 (5/25/00 e-mail from Marc Tayer to Zimmerman); Group 105 (5/30/00 e-mail from Tayer to Zimmerman); Group 112 (3/9/00 e-mail from Christine Foh to Don McLellan).

The court finds that the following documents do not contain communications related to seeking legal advice, and therefore are not protected by the attorney-client privilege: second document in Group 7, Entry 2 (Hagensick notes); third e-mail in Group 9, Entry 2 (11/10/00 e-mail from Hagensick to Luehrs); third e-mail in Group 9, Entry 3 (11/10/00 e-mail from Hagensick to Luehrs); Group 11, Entry 1 (6/22/01 e-mail from Hagensick to Douglas Means); Group 11, Entry 2 (6/01 e-mail from Luehrs to Means); Group 11, Entry 3 (6/22/01 e-mails from Means to Hagensick, and from Hagensick to Means); Group 11, Entry 4 (6/22/01 e-mails from Ly Tran to Means, from Means to Hagensick, and from Hagensick to Means); Group 11, Entry 5 (6/22/01 e-mails from Hagensick to Means, and from Means to Hagensick); Group 11, Entry 6 (6/25/01 e-mail from Hagensick to Means; 6/22/01 e-mails from Hagensick to Means, and from

8

Means to Hagensick); Group 11, Entry 7 (6/25/01 e-mail from Hagensick to Means); Group 11, Entry 8 (6/25/01 e-mails from Means to Hagensick, and from Hagensick to Means; 6/22/01 e-mails from Hagensick to Means, and from Means to Hagensick); Group 12, Entry 3 (11/28/01 e-mail from Landise to John Ryan); Group 21, Entries 1-4 (8/7/01 e-mails from Wyckoff to Gettinger, from Gettinger to Landise, from Landise to Gettinger, and from Gettinger to Wyckoff); fifth e-mail in Group 28, Entry 8 (7/2/01 e-mail from Gettinger to Landise); fifth and sixth e-mails in Group 28, Entry 9 (7/2/01 e-mails from Gettinger to Landise, and Landise to Gettinger); fifth through seventh e-mails in Group 28, Entry 9 (7/2/01 e-mails from Gettinger to Landise, and Landise to Gettinger); Group 48 (1/19/01 e-mail from Ron Van Kovering to Fish); Group 50 (12/12/01 e-mail from Landise to Gettinger); final e-mail in Group 56, Entry 2 (10/1/02 e-mail from John Hewitt to Sullivan); second e-mail in Group 56, Entry 4 (9/30/02 e-mail from Landise to Ronald Stelzner); and Group 73 (11/10/00 e-mail from Hagensick to Gettinger).

## II. Work Product Doctrine

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from disclosure documents and tangible things prepared in anticipation of litigation or for trial, by or for a party, or by or for a party's attorney. Fed. R. Civ. P. 26(b)(3). Generally, because "[p]rudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced[,] ... the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118-19 (7th Cir. 1983) (citation omitted). "The mere fact that litigation does eventually

9

ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege.... '[T]he work product rule does not come into play merely because there is a remote prospect of future litigation.'" Id. at 1118 (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977)). Because litigation may be anticipated when almost any incident occurs, "a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document." Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 145 F.R.D. 84, 87 (N.D. Ill. 1992).

Motorola and GI state that they anticipated litigation on September 12, 2000, when they received an e-mail from WH-TV. The e-mail stated that WH-TV was seeking cash, set-top boxes, and solutions to all outstanding problems by December 1, 2000. The e-mail further stated:

> We would rather solve matters this way, quickly, and get on with development plans. We also believe that this is far better for you than what the board was recommended to do by the outside experts.

Motorola and GI contend that this e-mail conveyed a substantial and significant threat of litigation. The court disagrees. The e-mail does not indicate what the alternative recommendation was, and litigation is not the only inference one can draw.

Motorola and GI next state, in conclusory fashion, that "WHTV continued its demands and threats of litigation (as discussed in great detail in the pending summary judgment motions) at the November 6, 2000 Philadelphia meeting with Zenith and Motorola, and in other correspondence in 2000 and the first several months of 2001." Motorola and GI do not cite to any correspondence or other evidence in support of this conclusion, or to any specific portion of

10

the voluminous summary judgment record. This is insufficient to meet Motorola's and GI's burden of establishing when they began to anticipate litigation; it is not the role of the court to sift through the record to make that determination. Accordingly, the court will use the date this suit was filed – June 11, 2001 – as the date by which Motorola and GI must have begun to anticipate litigation.

The court finds that Motorola and GI have failed to establish that the following documents were prepared in anticipation of litigation, and that they therefore deserve protection under the work product doctrine: Group 5, Entry 5 (draft letter dated "after 3/8/01"); second document in Group 7, Entry 2 (Hagensick notes) Group 8, Entries 1-3 (10/31/00 e-mail from Hagensick to Luehrs); Group 9, Entries 1-3 (6/29/00 e-mail chain; 11/10/00 e-mail chains); Group 21, Entries 1-4 (8/7/01 e-mails from Wyckoff to Gettinger, from Gettinger to Landise, from Landise to Gettinger, and from Gettinger to Wyckoff); Group 56, Entries 1, 2, and 4 (9/27/02, 10/1/02, and 9/30/02 e-mail chains); and Group 73 (11/10/00 e-mail from Hagensick to Gettinger).

The court finds that the following documents are protected under the work product doctrine: Group 1, Entries 1-4 (6/11/01 e-mail and attached annotations document from Landise to Gettinger); Group 28, Entries 11-12 (6/20/01 draft letters); Group 53, Entries 1, 3-5 (9/23/02 e-mail chains); Group 54, Entries 2-5 (10/24/02 and 10/25/02 e-mail chains); and Group 65, Entries 1 and 2 (8/26/02 e-mails from Ryan to "SBNS East Eng Staff" and from Tom Pennacchia to Ryan).

Finally, WH-TV argues that documents protected by the work product doctrine may nevertheless be discoverable "if they contain admissions by hostile, testifying witnesses that may

11

be used for impeachment purposes." Federal Rule of Civil Procedure 26(b)(3) provides that materials protected under the work product doctrine, other than an attorney's mental processes, may nevertheless be subject to disclosure if the party seeking discovery shows a substantial need for the materials, and an inability to obtain the substantial equivalent of the information by other means. To obtain the benefit of this exception to the work product doctrine, however,

> a party must present more than speculative or conclusory statements that the [material] will contain invaluable impeachment material. And, the impeachment value must be substantial because every prior statement has some impeachment value and otherwise the exception would swallow the rule.

Duck v. Warren, 160 F.R.D. 80, 83 (E.D. Va. 1995); see also 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure 2d § 2025 (2d ed. 1994) (quoting Hauger v. Chicago R.I. & P.R. Co., 216 F.2d 501, 508 (7th Cir. 1954)) ("A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements.").

While the burden of making this showing may be a relatively light one, given that WH-TV can only speculate as to the contents of the documents at issue, WH-TV has offered nothing to show a substantial need. Accordingly, the court denies WH-TV's request that the court review documents protected by the work product doctrine to determine whether they nevertheless should be produced.

**ORDERED:** WH-TV's Motion to Compel Production Against Motorola and General Instrument [525-1] is granted in part and denied in part.

The motion is granted as to the following documents: Group 5, Entry 5; Group 7, Entry 2 (notes only); Group 8; Group 9, Entries 1-2; first through third e-mails in Group 9, Entry 3 (two 6/29/00 e-mails from Hagensick to Slate; 11/10/00 e-mail from Hagensick to Luehrs); Group 11; Group 21, Entries 1-4; Group 24, Entries 1-3; fifth e-mail in Group 28, Entry 8 (7/2/02 e-mail from Gettinger to Landise); fifth and sixth e-mails in Group 28, Entry 9 (7/2/01 e-mails from Gettinger to Landise, and Landise to Gettinger); fifth through seventh e-mails in Group 28, Entry 10 (7/2/01 e-mails from Gettinger to Landise, and Landise to Gettinger); Group 35; Group 48; Group 50; Group 52; Group 56, Entries 1-2, 4; Groups 72-73; portion of Group 75 that does not specifically reference conference with Zimmerman and Smith; Group 78; Group 81; Group 92; and Group 95.

The motion is denied as to the following documents: Group 1, Entries 1-4; Groups 2-3; Group 7, Entry 1; Group 7, Entry 2 (12/15/00 e-mail only); fourth e-mail in Group 9, Entry 3 (11/10/00 e-mail from Luehrs to Vitkus); Group 12; Group 18, Entry 3; Group 28, Entries 1-3; first four e-mails in Group 28, Entry 8 (6/28/01 e-mail from Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); first four e-mails in Group 28, Entry 9 (6/28/01 e-mail from Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); first four e-mails in Group 28, Entry 10 (6/28/01 e-mail from Landise to Gettinger; 6/27/01 e-mails from Gettinger to Landise, Landise to Luehrs, and Luehrs to Wyckoff); Group 28, Entries 11-12; Group 39; Group 41; Group 53, Entries 1, 3-5; Group 54, Entries 2-5; Group 57, Entries 1-2; Group 65, Entries 1-2; Group 74;

the portion of Group 75 that specifically references conference with Zimmerman and Smith; Group 76; Groups 96-98; Groups 100-01; Groups 104-06; Group 112; and Group 114.

ENTER:

_George W. Lindberg_
George W. Lindberg
Senior U.S. District Judge

DATED: AUG 0 6 2003